**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARC JOHNSON | * | |
| | * | Civil Action No. CCB-19-2523 |
| v. | * | |
| | * | |
| MARYLAND TRANSIT | * | |
| ADMINSTRATION | * | |
| | * | |
| | ***** | |

**MEMORANDUM**

This civil rights action concerns a dispute over the alleged failure of the defendant Maryland Transit Administration's ("MTA") to make reasonable accommodations for the plaintiff Marc Johnson after he was injured driving an MTA bus in June 2016. Johnson raises claims for failure to accommodate, discrimination, and retaliation under the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and Maryland's Fair Employment Practices Act ("MFEPA"). Before the court is the MTA's motion to dismiss the amended complaint or, in the alternative, for summary judgment (ECF 26). The matter has been fully briefed, and no hearing is required. *See* Local Rule 105(6). For the reasons discussed herein, the motion, construed as one to dismiss, will be granted.

**FACTS AND PROCEDURAL HISTORY**

Marc Johnson was hired by the Maryland Transit Administration in 2008. (ECF 23, Am. Compl. ¶ 9). On June 22, 2016, Johnson suffered injuries when the MTA bus he was operating was involved in an accident, which resulted in his seeking medical care for pain in his arm, neck and back. (*Id.* ¶¶ 12, 16). Johnson was at the relevant time a member of Amalgamated Transit Union Local 1300, a labor union which had contracted with the MTA to implement, on or about May 1, 2017, a "Return to Work" ("RTW") program to require the MTA to provide to employees

1

who sustained on-the-job injuries light duty work at full pay in lieu of lower-paid workers compensation benefits. (*Id.* ¶¶ 18, 25; *see also* ECF 30-2, Johnson Aff. at ¶ 11).[1]

The MTA became aware of Johnson's physical disability on August 2, 2016, and placed him "on medical leave as [a] reasonable accommodation for his disability-related issues[.]" (*Id.* ¶ 13). Johnson received total temporary benefits under worker's compensation at two-thirds salary. (*See* ECF 30-2, Johnson Aff. at ¶ 4). Johnson underwent a medical workability evaluation on January 30, 2017, and he was deemed "not able to perform essential functions of his job as a Bus Operator now or in [the] foreseeable future." (*Id.* ¶ 14). Over the year following his accident, Johnson continued to experience "extreme pain[.]" (*Id.* ¶ 15). On August 31, 2017, Johnson sought emergency medical treatment for his pain and the attending physician indicated he could not return to work as a bus operator until he saw a specialist. (*Id.* ¶ 16). The same day, Johnson was referred by Dr. Robert Toney, the state's doctor, for involuntary retirement at "a fraction of his annual compensation." (*Id.* ¶¶ 17, 39). Up to this point in time, Johnson had made no complaints about a failure to accommodate.

But following Dr. Toney's opinion, Johnson requested as a reasonable acommodation that he be placed on light duty work pursuant to the MTA's agreement with Local 1300, which he believed would enable him to receive his full salary while he sought a second opinion. (*Id.* ¶ 18). Johnson's workers compensation attorney initiated a call with Thomas Burgess, the MTA's Director of Operations, Compliance and Investigations, to lodge this request. (*Id.* ¶ 20). Burgess rejected this request, stating there was no light duty work available and that obtaining another medical evaluation would merely confirm Dr. Toney's conclusion. (*Id.* ¶¶ 19, 20).

---

[1] An unexecuted copy of the RTW contract was attached, along with Johnson's Affidavit, as Exhibit A to Johnson's opposition. (*See* ECF 30-2 at 6). The court does not rely on this exhibit for the purposes of its ruling, but incorporates some of its language into the recitation of facts to clarify for the reader the timeline of events in places where the complaint lacks clarity.

On September 18, 2017, Johnson obtained an independent neurological evaluation from Dr. Bernhard Zunkeler, who concluded that Johnson could work at "light" capacity "effective immediately" and that he could, subject to his employer's safety requirements, return to his previous occupation as a bus operator within three months, if not immediately. (*Id.* ¶ 22).

Nevertheless, Johnson remained on workers compensation until November 2017, receiving two-thirds of his average weekly wage in temporary total disability benefits. (*Id.* ¶ 24). It appears that Johnson's benefits were terminated on or around November 9, 2017, (*see* ECF 30-2, Johnson Aff. at ¶ 5), and he received no salary from the MTA or from workers compensation from that time until January 2018, but he was eventually awarded back payments covering this time period. (ECF 23, Am. Compl. ¶ 33). During this time, Johnson repeatedly asked for light duty work, and Burgess and the MTA "repeatedly represented that no light duty was available" even though "other employees were accommodated with light duty" by, for example, being "placed at subway stations to man the booths." (*Id.* ¶ 26).

Johnson ultimately obtained another opinion on his eligibility for work when he was examined by Dr. David B. Lumsden on January 2, 2018, and Dr. Lumsden determined that Johnson could return to work as a bus operator safely. (*Id.* ¶¶ 39–40). Following that determination, Johnson was reinstated as a bus operator on or around January 8, 2018. (*Id.* ¶ 36).

Johnson filed a charge with the Maryland Commission on Human Rights and received a right to sue letter on June 5, 2019. (*Id.* ¶¶ 6, 8). Johnson brought this action on August 30, 2019 and, after the MTA filed a motion to dismiss, Johnson filed an amended complaint on April 29, 2020. The amended complaint asserts that the MTA discriminated against Johnson, retaliated against him for engaging in protected activities, and failed to provide him with reasonable accomodations, all in violation of the Rehabilitation Act, the ADA, and MFEPA. Johnson seeks

damages and an injunction both barring continued discrimination and granting a reasonable accommodation. The MTA moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on May 18, 2020.[2] The matter is now fully briefed and ready for resolution.

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted only if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 155 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carrol Cty.*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the

---

[2] The MTA moved in the alternative for summary judgment under Federal Rule of Civil Procedure 56.

4

complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

### I. The ADA

Johnson contends that the MTA discriminated against him by failing to accommodate his disability, while the MTA argues that this claim is barred by the state sovereign immunity doctrine. The Eleventh Amendment provides that states may not be sued for retrospective monetary relief by private individuals in federal court except in two situations: after consent by the state, or under an abrogation of state sovereign immunity by Congress acting pursuant to a valid exercise of its power. *Bd. of Trustees of Univ. of Al. v. Garrett*, 531 U.S. 356, 363–64 (2001); *see also McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). This protection extends to state agencies. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

In his opposition, Johnson does not contest that the MTA is protected by state sovereign immunity. Instead, he argues that the Eleventh Amendment does not prohibit his claim for injunctive relief barring continued discrimination and granting a reasonable accommodation. (*See* ECF 30-1, Opp. at 5).

The MTA is correct that Johnson's claim for damages is barred by the state sovereign immunity doctrine. And as for the injunction, the court can discern from the complaint no basis on

which to exercise jurisdiction over the claim for prospective relief. Under Article III of the U.S. Constitution, federal courts have jurisdiction only over cases and controversies. *See Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). Past exposure to potentially "illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). As the MTA points out, Johnson has not identified any current or threatened unlawful conduct that would be the proper subject of an injunction or that would present a justiciable case or controversy. (*See* ECF 35, Reply at 2). By the time the complaint was filed, Johnson had already been reinstated to his position as a bus operator. He does not allege that the MTA currently is threating to or is likely to designate him for involuntary retirement or is otherwise engaging in any conduct which would violate the ADA. Additionally, the portion of his complaint that addresses his ADA claim mentions compensatory and punitive damages for past violations of the ADA, but makes no mention of any prospective relief. Accordingly, the court will grant the MTA's motion to dismiss Johnson's ADA claim.

## II.     The Rehabilitation Act and MFEPA

Johnson also alleges that the MTA discriminated and retaliated against him and failed to provide him with reasonable accommodations in violation of the Rehabilitation Act and MFEPA. The MTA argues that Johnson has failed to state a plausible claim for relief. The court will address each potential basis for relief in turn.

### A.     Failure to Accommodate

To state a claim for failure to accommodate under the Rehabilitation Act or MFEPA, a plaintiff must allege: (1) she was a qualified person with a disability; (2) the employer had notice of her disability; (3) the plaintiff could perform the essential functions of her position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation. *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019) (Rehabilitation Act); *Adkins v. Peninsula Reg. Med. Ctr.*, 224 Md. App. 115, 139 (Ct. Spec. App. Md. 2015) (MFEPA). Here, the MTA focuses its challenge on the fourth element of the claim, arguing that medical leave was a reasonable accommodation which facilitated Johnson's return to his position as a bus operator and that employees are not entitled to the accommodation of their choice.[3] In response, Johnson argues that he requested light duty at full pay pursuant to the RTW agreement and that the failure to provide him that accommodation amounted to a denial of reasonable accommodations.

As a preliminary matter, whether the MTA was required under the RTW agreement to provide Johnson with light duty is a question of contractual interpretation. In this case, Johnson chose not to pursue his rights under the contract, and proceeded only under the employment discrimination laws. The question before the court is therefore whether the MTA's proffered accommodation of medical leave was a reasonable accommodation under the relevant statutes, not under the contract.

---

[3] The MTA also argues that Johnson conceded this was a reasonable accommodation given that his complaint states: "[Johnson] was placed on medical leave as reasonable accommodation for his disability-related issues resultant from the accident." (ECF 23 ¶ 13). Yet Johnson argues in his opposition that this was merely a statement of the MTA's position. The use of the passive voice makes it difficult to discern which interpretation is correct. At this stage of the proceedings, the court must resolve all inferences in favor of Johnson, including this one.

Under the Rehabilitation Act, "[a]n employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested." *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 415 (4th Cir. 2015). An employer instead may provide an "alternative reasonable accommodation." *Id.* In *Wilson v. Dollar General Corp.*, the Fourth Circuit Court of Appeals concluded that medical leave is not unreasonable so long as it "(1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." 717 F.3d 337, 345 n.7 (4th Cir. 2013); *see also EEOC v. Mfrs. & Traders Trust Co.*, 429 F. Supp. 3d 89, 108–09 (D. Md. 2019) (same); *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 596 (S.D.W. Va. 2008) (medical leave is a reasonable accommodation only if it is finite and will be reasonably likely to enable an employee to return to work); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007) (unpaid leave of absence can be a reasonable accommodation); *Humphrey v. Memorial Hospital Ass'n*, 239 F.3d 1128, 1136 & n.12 (9th Cir. 2001) (leave of absence is reasonable accommodation for an employee whose condition caused him to sporadically miss work). A plaintiff bears the burden of persuasion with respect to demonstrating that an accommodation is reasonable. *Kitchen*, 552 F. Supp. 2d at 596.

In this case, there are no facts alleged that suggest Johnson's accommodation was unreasonable. Johnson was placed on medical leave and received benefits starting on August 2, 2016. (ECF 23 ¶¶ 13). He was referred to the state's doctor for an evaluation more than a year later, on August 31, 2017. (*Id.* ¶ 17). Johnson made his first request to be placed on light duty after the state's doctor referred him for involuntary retirement. (*Id.* ¶¶ 17, 18). Though Johnson obtained a second opinion from Dr. Zunkeler, there is no indication that the state was bound to follow an

8

independent evaluation that contradicted the conclusions of the state's doctor. (*Id.* ¶ 22). As he and his worker's compensation attorney negotiated with the MTA over the light duty request, Johnson continued to received worker's compensation benefits equivalent to two-thirds of his salary.[4] (*Id.* ¶¶ 24, 33). Then, just a few months after the negotiations started, the MTA provided another workability evaluation and Johnson was allowed to return to work as a bus operator. (*Id.* ¶ 36). In sum, Johnson was on medical leave for a finite period of time, at two-thirds salary, which allowed him to return to work full time: this is a reasonable accommodation. *See Wilson*, 717 F.3d 337, 345 n.7; *Kitchen*, 552 F. Supp. 2d at 596. And even if the MTA's willingness to enter into a contract with an RTW provision indicates that light duty might also be a reasonable accommodation, the Rehabilitation Act does not obligate an employer to provide the exact accommodation requested, particularly in the face of conflicting medical opinions about Johnson's ability to return to any level of work. Accordingly, the court will dismiss Johnson's failure to accommodate claim.

    B.    *Retaliation*

To state a claim for retaliation under the Rehabilitation Act and MFEPA, a plaintiff must allege: (1) he engaged in a protected activity; (2) the employer subjected him to an adverse action; and (3) the protected activity was causally connected to the adverse action. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (Rehabilitation Act); *Lockheed Martin Corp. v. Balderrama*, 227 Md. App. 476, 504 (Ct. Spec. App. Md. 2016) (MFEPA). Here, the MTA argues that Johnson did not engage in any protected activities prior to the allegedly retaliatory actions, and that the admittedly protected activity of filing a charge of discrimination in March of 2018 cannot satisfy the causation element because it occurred after the allegedly retaliatory actions. Johnson contends that two different kinds of requests made prior to the alleged retaliation were

---

[4] Though his benefits initially were not distributed in November and December 2017, Johnson received backpay and he makes no allegations that the denial of benefits occurring at this time was the MTA's fault. (ECF 23 ¶ 33 n.1).

protected activities and that the MTA's denial of those requests constituted adverse actions. Specifically, Johnson identifies (1) his request for another workability exam to determine his fitness for duty and (2) his request for reasonable accommodations.

In the context of a retaliation claim, a plaintiff can demonstrate that an employer acted adversely by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Laird v. Fairfax Cty., Va.*, 978 F.3d 887, 893 (4th Cir. 2020). Whether an action is materially adverse "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington*, 548 U.S. at 71.

In this case, it is difficult to discern from the complaint the relevant timeline or even which activity was protected and which was an adverse action causally connected to it. The relevant portion of the complaint states:

> 18. . . . Despite MTA's contractual obligation to provide light duty to Plaintiff, the MTA ignored his requests and retaliated against him for refusing to take involuntary medical retirement, seeking a second opinion, and insisting on a light duty reasonable accommodation.
>
> 19. When Plaintiff engaged in protected activity by refusing to take involuntary medical retirement and requesting reasonable accommodation in the form of light duty with Thomas Burgess . . . [he] became angry and stated that no light duty was available. . . .
>
> 20. Burgess indicated any further workability evaluations . . . would be futile since another evaluation would just confirm the opinion of the first evaluation recommending retirement. . . .
>
> 21. [This] was a foregone conclusion and not based on a true, neutral, unbiased evaluation.

In his opposition, Johnson attempts to clarify the complaint. He states that after he "insisted on another workability exam, requested light duty, and then had his lawyer call to request an additional workability exam," the MTA "then retaliated against [him] by denying him light duty and initially denying him permission for an additional workability exam almost immediately after the requests were made[.]" (ECF 31-1 at 16).

It is clear that Johnson himself was not dissuaded from making or supporting a charge of discrimination, or from engaging in any other protected activity. Johnson did not make a request for light duty just once, but made "repeated requests" which were "repeatedly denied[.]" (ECF 23 ¶¶ 24, 26). And in March of 2018 he did file a charge of discrimination with the Maryland Commission on Civil Rights. (*Id.* ¶ 6). But under *Burlington*, the district courts are to apply an objective standard, asking whether the challenged action might have dissuaded a reasonable worker from making or supporting a charge of discrimination. 548 U.S. at 68.

Notably, though the denial of a request for accommodation may form the basis for a retaliation claim, such a denial does not by itself support a claim of retaliation.[5] *Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015); *see also Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013). In the context of an ADA claim, the court in *McClain v. Tenax Corp.* explained that "the mere denial of a request for a reasonable accommodation cannot be an adverse employment action giving rise to a separate ADA retaliation claim" lest "every time an employee was denied a requested accommodation, he would be able to 'double dip' by asserting both the ADA failure-to-accommodate and ADA retaliation claims." 304 F. Supp. 3d 1195, 1206–07 (S.D. Ala. 2018).

---

[5] Indeed, retaliation, at least in the context of employment relations, is "[a]n adverse employment action taken because an employee has engaged in a legally protected activity." BLACK'S LAW DICTIONARY (11th ed. 2019). The term logically encompasses situations where the employer is motivated by the employee's protected activity in one transaction to cause harm to the employee in a separate transaction as reprisal or revenge. That is why, in the sole case cited by Johnson on the issue, the adverse action was not the denial of the request for reasonable accommodations but rather a separate retaliatory event. *See Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001) (finding causal connection between employee's request for reasonable accommodation and employee's termination).

11

Therefore, Johnson's claim that the denial of his request for accommodations was an adverse action cannot state a plausible claim for relief.

The next issue is whether the MTA's denial of a subsequent workability evaluation could constitute retaliation for Johnson's request for a reasonable accommodation. The court holds that it does not. Putting aside the problem that Johnson may not amend his complaint through his opposition to MTA's motion to dismiss, the court notes that Johnson sought the workability evaluation in order to obtain the specific accommodation he desired. That is, in denying his request for another evaluation (after he had just received an evaluation from the state's doctor), the MTA did no more than deny him his specific request for accommodations—an issue addressed in the previous section of this memorandum. Rather than distinct and causally connected events, the events alleged by Johnson as forming the basis of his protected activity and his employer's retaliation appear actually to be but one course of events—namely the negotiations over Johnson's accommodations. Johnson may not recast the allegations that the MTA failed to accommodate his disability as retaliation without showing a retaliatory act that was *caused* by protected activity. *See Hooven-Lewis*, 249 F.3d at 272. The MTA provided Johnson with a workability evaluation, performed by Dr. Toney, and a refusal to provide additional evaluations immediately thereafter does not raise an inference of retaliation. (ECF 23 ¶ 17). Further, while Johnson's negotiations with the MTA proceeded, he remained on workers compensation. (*Id.* ¶¶ 24, 33). A few months later, as a result of these negotiations, Johnson was given another workability examination and was restored to his status as a bus operator. (*Id.* ¶¶ 36, 39–40). In sum, the court can discern from the facts alleged no causal connection between the request for a specific accommodation and the immediate denial of another workability examination. Accordingly, the court will also dismiss Johnson's retaliation claim.

## CONCLUSION

For the reasons stated herein, the MTA's motion, construed as one to dismiss, will be granted. Johnson's amended complaint will be dismissed. A separate order follows.

| | |
|---|---|
| 3/2/2021 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |